IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

JEANNETTE SOTO SANTINI,
    Plaintiff,

v.                                                               Civil No. 3:22cv370 (DJN)

JUDGE JASON S. RUCKER, *et al.*,
    Defendants.

**<u>MEMORANDUM OPINION</u>**

This matter comes before the Court on Defendants' Motions to Dismiss Plaintiff's Amended Complaint. (ECF Nos. 13, 15, 16.)[1] Drawing all reasonable inferences in favor of the *pro se* Plaintiff and assuming the truth of the well-pled factual allegations in her Amended Complaint, the Court finds that it lacks jurisdiction over Plaintiff's claims pursuant to the *Rooker-Feldman* doctrine. Alternatively, the Court finds that judicial immunity bars Plaintiff's claims against Defendants Judge Jason S. Rucker, Judge William J. Minor, Jr. and Judge Susan J. Stoney ("Defendant Judges").[2] Finally, the Court concludes that even if jurisdictional issues

---

[1]    Throughout her Amended Complaint, Plaintiff changes and repeats paragraph identifiers. Accordingly, in the interest of clarity, the Court employs the pagination assigned by the CM/ECF docketing system.

[2]    Although Plaintiff fails to name them as Defendants, the body of Plaintiff's Amended Complaint also contains allegations that Judge Thomas P. Mann and Judge Brett A. Kassabian engaged in "misconduct" by failing to follow "protocol" and otherwise being "disrespectful" to Plaintiff during state court hearings held on March 25, 2022, and April 29, 2022. (Amend. Compl. (ECF No. 4) at 8.) Insofar as Plaintiff intended to name Judge Mann or Judge Kassabian as Defendants, the Court notes that her claims against them fail for the same reasons outlined below.

did not scuttle Plaintiff's case, Plaintiff wholly fails to state a claim upon which the Court could grant relief against any Defendant.

Accordingly, and for the reasons set forth below, the Court will grant all three motions and dismiss Plaintiff's claims against all Defendants. (ECF Nos. 13, 15, 16.) Plaintiff's pending Motion for Translator Services will be denied as moot.[3] (ECF No. 6.)

## I. BACKGROUND

Plaintiff sues her former landlord, T-C Ashford Meadows, LLC ("Ashford Meadows"), and its attorney, Andrew Palanzi, as well as Fairfax County Court Judges Jason S. Rucker, William J. Minor, Jr. and Susan J. Stoney (hereinafter "Defendant Judges"). (Amend. Compl. at 1.) Her claims arise out of the events surrounding her March 2021 eviction and several related state court proceedings.

Plaintiff proceeds *pro se*, and the Court thus affords her Amended Complaint a liberal construction. *Laber v. Harvey*, 438 F.3d 404, 413 n.3 (4th Cir. 2006) (citing *Hemphill v. Melton*, 551 F.2d 589, 590–91 (4th Cir. 1977)). A plaintiff's *pro se* status does not excuse a clear failure to allege a federally cognizable claim, however. *See Weller v. Dep't of Soc. Servs.*, 901 F.2d

---

[3] In addition to her Motion for Translator Services, (ECF No. 6), Plaintiff has filed several other notices, letters, notifications and requests on the record. (*See, e.g.*, ECF No. 11 (titled "False Statement on Justia Public Page How a Judicial Misconduct Happened in Fairfax County"); ECF No. 19 (titled "Federal Court Clerk"); ECF No. 26 (titled "Notification in my Case of Medical Treatment"); ECF No. 27 (titled "Judicial Judges Misconduct Fairfax"); ECF No. 30 (titled "Requested Appropriate Dispute Notification").) Plaintiff may not expand her Amended Complaint via these pleadings, and the Court need not consider their contents in resolving Defendants' Motions to Dismiss. "It is well-established that [a party] cannot amend [her] complaint through briefing or oral advocacy." *S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013) (citation omitted). In acknowledgment of Plaintiff's *pro se* status, however, the Court has reviewed these filings. Because the Court finds that Plaintiff's assorted musings and conjecture do not otherwise present any grounds upon which Plaintiff is entitled to relief, the Court will not address these pleadings further.

387, 390–91 (4th Cir. 1990) (affirming dismissal of certain claims brought by *pro se* plaintiff despite liberal construction). As the Fourth Circuit has explained, "[t]hough [*pro se*] litigants cannot, of course, be expected to frame legal issues with the clarity and precision ideally evident in the work of those trained in law, neither can district courts be required to conjure up and decide issues never fairly presented to them." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1276 (4th Cir. 1985).

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept a plaintiff's well-pleaded factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, this principal does not apply to legal conclusions. *Id.* Further, to the extent that a defendant raises substantive challenges to the Court's jurisdiction over the subject matter of a plaintiff's complaint, the Court may consider facts outside of the complaint and need not accept the allegations in the complaint as true. *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). With these principles in mind, the Court accepts the following facts.

A.   **Factual Background**

In July 2020, Plaintiff moved into an apartment owned by Ashford Meadows and located at 2511 John Epps Road in Herndon, Virginia. (Amend. Compl. at 2.) Plaintiff physically signed her lease on July 7, 2020. (Amend. Compl. at 2.) On December 14, 2020, Plaintiff began employment with Brinks Armored; however, several days later, on December 17, 2020, Plaintiff injured her wrist while outside her apartment.[4] (Amend. Compl. at 1.) As a result, Plaintiff could not perform the work required of her by Brinks and lost her job. (Amend. Compl. at 1.)

---

[4]   Plaintiff fails to clearly explain how she injured her wrist or how Defendants' conduct caused her to do so.

3

Plaintiff's problems did not end there. During her residence at Ashford Meadows, Plaintiff became suspicious that her electric bill included charges associated with several communal building lights after one of the lights burned out and her bill decreased. (Amend. Compl. at 2.) Thereafter, Plaintiff removed a second outdoor light, which reduced her bill further. (Amend. Compl. at 2.) As a result, Plaintiff sought a formal accounting of all of the charges on her electric bill from her service provider and informed Ashford Meadows that she was being billed for utilities outside the scope of her rental contract. (Amend. Compl. at 2.)

At some point, Plaintiff fell behind in her rent payments and, on or around November 6, 2020, Ashford Meadows issued a Thirty-Day Notice of Termination of Lease.[5] (Amend. Compl. at 5.) On December 11, 2020, Ashford Meadows initiated a summons for Unlawful Detainer against Plaintiff in Fairfax County General District Court, and Plaintiff answered with her Grounds of Defense on January 19, 2021. (ECF No. 15-1, at 1–2.) The court set the matter for a hearing on January 29, 2021. (Amend. Compl. at 3.)

On the day of the hearing, Plaintiff arrived at the court and was informed by the presiding judge that someone had called the court on January 28, 2021, to report that Plaintiff was very ill and needed to reschedule. (Amend. Compl. at 3.) The presiding judge continued the case until later in the day. (Amend. Compl. at 4–5.) At a contested hearing later that day, Defendant Judge Rucker assumed the role of presiding judge. (Amend. Compl. at 5.) During the hearing, Defendant Judge Rucker "gave [Plaintiff] a nasty look," refused to let Plaintiff testify and did not

---

[5] Plaintiff attached a copy of the Notice to her original Complaint. The full notice was titled "21 Day Notice to Cure Breach of Lease/ 30 Day Notice of Termination of Lease/ Demand to Remove Defamatory Posting and Cease and Desist From Publishing Defmatory Content/ Reservation of Rights." (ECF No. 1-2.) In the notice, Ashford Meadows informed Plaintiff that her removal of "certain common areas lights located in the Property breezeway . . . constitute[d] a material breach and noncompliance with the terms and conditions of [her] Lease." (*Id.*)

4

view her exhibits. (Amend. Compl. at 5.) Defendant Judge Rucker then awarded judgment for Ashford Meadows, represented by Defendant Palanzi, as well as court costs and attorney's fees totaling $3,064.00. (Amend. Compl. at 5; Mem. in Supp. of Def. Judges' Mot. to Dismiss ("Judge's Mem.") (ECF No. 14) at 4.) Defendant Judge Rucker informed Plaintiff that she would have to pay the full $3,064.00 before she could appeal his decision. (Amend. Compl. at 5.) Plaintiff neither paid nor appealed. (Amend. Compl. at 6.)

Instead, on February 4, 2021, Plaintiff filed a Warrant in Debt in the Fairfax District Court against Ashford Meadows and Defendant Palanzi, alleging various claims including that her rental contract was deceptive, that she was injured by hazardous conditions at the property and that Defendants committed perjury by (1) calling the Court on January 28, 2021 to falsely report that Plaintiff was sick, and (2) falsely telling Judge Rucker during trial that Plaintiff signed her lease on July 3, 2020. (ECF No. 14-1, at 3–12.) While Plaintiff's action remained pending, Ashford Meadows evicted Plaintiff. (Amend. Compl. at 3.) Then, following a hearing on March 2, 2021, Defendant Judge Minor, Jr. dismissed Plaintiff's claims against Defendant Palanzi with prejudice. (Amend. Compl. at 4; ECF No. 14-1.) After a final hearing held on July 15, 2021, Defendant Judge Stoney entered judgment in favor of Ashford Meadows. (Amend. Compl. at 7; ECF No. 15, at 3.) During the trial, Defendant Judge Stoney directed that Plaintiff listen to a "translator" through a pair of headphones. (Amend. Compl. at 7–8.) At some point, Plaintiff's ability to hear the "translator" ceased, and Defendant Judge Stoney did not stop the trial. (Amend. Compl. at 7–8.) Plaintiff did not appeal either Judge Minor, Jr.'s or Judge Stoney's ruling.

On December 28, 2021, Plaintiff again sought legal remedy against Ashford Meadows and Palanzi by filing a complaint in Fairfax Circuit Court.[6] (ECF No. 14-2.) In that case, Plaintiff asserted claims for wrongful eviction, deceptive rental contract, perjury and defamation. Plaintiff also asserted claims of judicial misconduct and "conflict of interest" against Defendant Judges Rucker and Minor, Jr. (ECF No. 14-2.) On March 25, 2022, Judge Thomas P. Mann dismissed Plaintiff's claims against Ashford Meadows and Palanzi with prejudice. (Amend. Compl. at 8.) On April 29, 2022, Judge Brett A. Kassabian granted Judge Rucker's and Judge Minor, Jr.'s pleas of judicial immunity. (Amend. Compl. at 8.)

**B.    Plaintiff's Complaint**

On June 1, 2022, Plaintiff filed her Amended Complaint. (ECF No. 4.) Although her claims are remarkably difficult to discern, Plaintiff ostensibly asserts that Ashford Meadows failed to safely maintain its property, which resulted in Plaintiff injuring her wrist. Further, Plaintiff contends that Ashford Meadows's rental agreement was deceptive and that the company unlawfully evicted her. Finally, Plaintiff contends that both Ashford Meadows and Palanzi committed perjury by (1) falsely claiming that Plaintiff's lease began on July 3, 2020, and (2) calling the Fairfax Circuit Court on the day before Plaintiff's January 29, 2021 hearing to report that Plaintiff was ill and could not attend. For their part, Plaintiff alleges that Defendant Judges engaged in "judicial misconduct" while presiding over her state court proceedings despite clear "conflicts of interests" and "unfairly" making various rulings in favor of Ashford Meadows and Palanzi.

---

[6]    *See Jeanette Soto Santini v. T-C Ashford Meadows, LLC, Andrew Palanzi, Esq., William J. Minor, Jr., Jason R. Rucker, and Lincoln Property Co.*, Case No. CL 21-17721. (ECF No. 14-2.)

In summary, Plaintiff posits that her eviction combined with Defendants' conduct during her state Court proceedings caused ongoing injury to her wrist and resulted in the loss of her property when her storage unit burned down. (Amend. Compl. at 6–7.) Based on these claims, Plaintiff seeks $700,000 in compensation.

### C.    Defendant Judges' Joint Motion to Dismiss

Defendant Judges move to dismiss Plaintiff's claims against them for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and failure to state a claim under Rule 12(b)(6). Specifically, Defendant Judges argue that the Court lacks either federal question or diversity jurisdiction over this action and that judicial immunity shields them from Plaintiff's claims. (Judge's Mem. at 6–10.) Alternatively, even assuming Plaintiff has plausibly established jurisdiction and that judicial immunity does not bar her claims, Defendant Judges argue that Plaintiff "has failed to allege facts . . . that give rise to a plausible claim upon which relief can be granted." (Judge's Mem. at 1.)

Plaintiff filed her Memorandum in Opposition to Defendant Judges' Motion to Dismiss on July 19, 2022, (Pl.'s Mems. in Opp. to Def. Judges' Mot. to Dismiss ("Pl. Judges Resps.") (ECF Nos. 20, 21)), and Defendant Judges filed their Reply on July 22, 2022, (Reply Mem. in Supp. of Def. Judges' Mot. to Dismiss ("Judges' Reply") (ECF No. 24)).

### D.    Palanzi's and T-C Ashford Meadows LLC's Motions to Dismiss

Separate from Defendant Judges, on July 6 and July 13, 2022, respectively, Defendants Ashford Meadows and Palanzi each filed a Motion to Dismiss, (ECF Nos. 15, 16). Because both Defendants assert identical grounds for dismissal, the Court analyses their motions together.

In support of their Motions, Ashford Meadows and Palanzi both contend that the principle of *res judicata* bars Plaintiffs claims against them and thus compels the Court to

7

dismiss her claims.[7] Alternatively, each assert that Plaintiff fails to adequately plead any federally cognizable claims for relief.

Plaintiff filed Memorandums in Opposition to both Motions to Dismiss on July 19, 2022, (Pl.'s Mem. in Opp. to Def. Ashford Meadows's Mot. to Dismiss ("Pl. Ashford Meadows Resp.") (ECF No. 22); Pl's Mem. in Opp. to Def. Palanzi's Mot. to Dismiss ("Pl. Palanzi Resp.") (ECF No. 23)). Neither Defendant replied and the time to do so has now passed, rendering the Motions ripe for review.

## II. STANDARD OF REVIEW

A motion made pursuant to Federal Rule of Civil Procedure 12(b)(1) challenges the court's jurisdiction over the subject matter of the complaint. A defendant moving for dismissal for lack of subject matter jurisdiction may either attack the complaint on its face, asserting that the complaint "fails to allege facts upon which subject matter jurisdiction can be based," or may attack "the existence of subject matter jurisdiction in fact, quite apart from any pleadings." *White v. CMA Const. Co., Inc.*, 947 F. Supp. 231, 233 (E.D. Va. 1996) (internal citations omitted). In either case, the plaintiff bears the burden of proof to establish jurisdiction. *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). The Court must dismiss an action if it determines that it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3). Further, "[a]lthough somewhat distinct from subject matter jurisdiction, courts have often considered immunity arguments, including arguments of judicial immunity, on Rule 12(b)(1) motions to dismiss." *Crawford v. Hughes*, 2021 WL 2125031, at *5 n.15 (E.D. Va. May 25, 2021) (quoting *Chien v. Motz*, 2019 WL 346761, at *6 (E.D. Va. Jan. 7,

---

[7] Because the Court finds that the *Rooker Feldman* doctrine bars Plaintiff's claims and that Plaintiff fails to state a claim upon which the Court may grant relief, the Court does not reach Defendants' *res judicata* arguments.

8

2019), *report and recommendation adopted*, 2019 WL 346406 (E.D. Va. Jan. 28, 2019) (Lauck, J.).

By comparison, a motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of a complaint or counterclaim; it does not serve as the means by which a court will resolve contests surrounding the facts, determine the merits of a claim or address potential defenses. *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering a motion to dismiss, the Court will accept a plaintiff's well-pleaded allegations as true and view the facts in a light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

Under the Federal Rules of Civil Procedure, a complaint must state facts sufficient to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests[.]'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). As the Supreme Court explained in *Twombly*, a complaint must state "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action," though the law does not require "detailed factual allegations." *Id.* (citations omitted). Ultimately, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," rendering the right "plausible on its face" rather than merely "conceivable." *Id.* at 555, 570. Thus, to survive a 12(b)(6) motion, a complaint must assert facts that are more than "merely consistent with" the other party's liability. *Id.* at 557. The facts alleged must be sufficient to "state all the elements of [any] claim[s]." *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002) and *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002)). Finally, as relevant here, the Court may "consider

9

matters of public record such as documents from prior state court proceedings in conjunction with a Rule 12(b)(6) motion." *Walker v. Kelly*, 589 F.3d 127, 139 (4th Cir. 2009).

### III.   ANALYSIS

**A. The Court Lacks Jurisdiction Pursuant to the *Rooker-Feldman* Doctrine**

"Under the Rooker-Feldman doctrine, a 'party losing in state court is barred from seeking what in substance would be appellate review of the state judgment in a United States district court.'" *Am. Reliable Ins. Co. v. Stillwell*, 336 F.3d 311, 316 (4th Cir. 2003) (quoting *Johnson v. De Grandy*, 512 U.S. 997, 1005–06 (1994)). Courts consider the doctrine jurisdictional and thus consider the doctrine before entertaining a plaintiff's claims.[8] *Id.* (citing *Plyler v. Moore*, 129 F.3d 728, 731 (4th Cir. 1997); *Jordahl v. Democratic Party of Va.*, 122 F.3d 192, 197 n.5 (4th Cir. 1997)). "[T]he *Rooker-Feldman* doctrine applies only when the loser in state court files suit in federal district court seeking redress for an injury allegedly caused by the state court's decision itself." *Davani v. Va. Dept. of Transp.*, 434 F.3d 712, 713 (4th Cir. 2006). Here, Plaintiff repeatedly asserts that Ashford Meadows and Defendant Palanzi's prior state-court victories are fraudulent and seeks redress for financial, physical and emotional harm suffered as a result of her repeated state-court losses. (*See, e.g.*, Amend. Compl. at 5 (asserting that Defendants "cannot claim anything [because] they never won the Case"); Amend. Compl. at 6, 9 (asserting that judicial misconduct caused Plaintiff's ongoing injuries and that "Judge Jason S. Rucker, Andrew Palanzi and Ashford Meadows LLC are [fully] responsible for the condition of [Plaintiff's] wrist"); Amend. Compl. at 7 (asserting that Plaintiff should not "have to pay" the state court judgement or attorney's fees awarded by Judge Rucker).)

---

[8]   Defendant Judges assert that Plaintiff also fails to establish this Court's subject matter jurisdiction pursuant to 18 U.S.C. §§ 1331 and 1332. Because the *Rooker Feldman* doctrine bars Plaintiff's claims, the Court declines to address this argument.

10

The *Rooker-Feldman* doctrine "preserves a fundamental tenet in our system of federalism that, with the exception of habeas cases, appellate review of state court decisions occurs first within the state appellate system and then in the United States Supreme Court." *Id*. Accordingly, a district court lacks jurisdiction to adjudicate a case if doing so would "pass upon the merits of a state court decision." *Jordahl*, 122 F.3d at 202.

Here, Plaintiff seeks to undermine and undo various unfavorable state court judgments. Indeed, Plaintiff's legal claims, insomuch as the Court can extract them from her laundry list of conclusory allegations, arise from a landlord-tenant dispute and the conduct of the parties and presiding judges during multiple state court proceedings during which Plaintiff raised claims all-but identical to those that she raises now. At best, Plaintiff's claims serve only to rehash Plaintiff's earlier challenges to her rental contract, her eviction, Ashford Meadows's and Defendant Palanzi's alleged perjury during her January 2021 court proceedings and Defendant Judges alleged misconduct while presiding over Plaintiff's various state court actions. Indeed, Plaintiff fails to articulate any federally cognizable legal basis for her claims. Because Plaintiff's Complaint amounts to no more than a direct appeal of state-court judgments, the Court lacks jurisdiction over her claims and must dismiss the case pursuant to the *Rooker-Feldman* doctrine.

Even if the *Rooker-Feldman* doctrine did not bar Plaintiff's claims, however, the Court would still dismiss her claims, because judicial immunity shields Defendant Judges, and Plaintiff fails to plausibly plead a valid claim for relief.

**B. Judicial Immunity Protects Defendant Judges From Plaintiff's Claims**

Plaintiff seeks redress against Defendant Judges for various "misconduct" that they committed during her state court proceedings. (Amend. Compl. at 6.) For the foregoing reasons, her claims must fail.

11

It is well settled that "'a judicial officer, in exercising the authority vested in him, [should] be free to act upon his own convictions, without apprehension of personal consequences to himself.'" *Stump v. Sparkman*, 435 U.S. 349, 359–60 (1978) (quoting *Bradley v. Fisher*, 80 U.S. 335, 347 (1872)). Accordingly, a judicial officer enjoys absolute immunity from suit unless a plaintiff establishes that one of two exceptions apply. A defendant judge may lose immunity if either (1) the judge's injurious acts constitute "non-judicial actions, i.e., actions not taken in the judge's judicial capacity" or (2) if the injurious acts are judicial in nature, the judge performed those acts "in the complete absence of all jurisdiction." *Mireles v. Waco*, 402 U.S. 9, 11–12 (1991) (internal citations omitted). To determine whether a judge's acts fall outside the scope of his or her judicial capacity, the Court examines "the nature of the act itself, i.e., whether it is a function normally performed by a judge, and . . . the expectations of the parties, i.e., whether they dealt with the judge in his [or her] judicial capacity." *Stump*, 435 U.S. at 362. Judicial immunity shields a defendant judge from suit for all judicial acts, even those taken with malicious or corrupt intent. *Id.* at 359–64.

Under the second exception, courts recognize a distinction between acts done in "excess of jurisdiction" and those done "in the clear absence of all jurisdiction." *Stump*, 435 U.S. at 356 n.6 (quoting *Bradley*, 80 U.S. at 351–52). In the case of the former, a judge enjoys immunity despite exceeding his or her jurisdiction over the subject matter of an issue; whereas, in the case of the latter, a judge may be held to account for actions performed without any authority. *Bradley*, 80 U.S. at 352.

Here, Plaintiff fails to allege any facts triggering either exception. Plaintiff attacks the judicial rulings of several state court judges who presided over her eviction proceedings and related civil claims. Critically, Plaintiff's claims relate directly to actions appropriately taken by

Defendant Judges in their roles as presiding judges, such as hearing evidence, accepting or not accepting exhibits and ruling on various motions and legal issues. Indeed, Plaintiff only interacted with Defendant Judges as a litigant appearing before them. As Plaintiff concedes, the "Supreme Court has consistently upheld absolute immunity for Judges performing Judicial Acts, even when those acts violate clearly established judicial procedures." (Pl. Judges Resp. (ECF No. 20) at 1 (emphasis omitted).) Although Plaintiff seemingly attempts to circumvent this rule by asserting that Defendant Judges were improperly motivated by private biases, she wholly fails to identify any actions taken by Defendant Judges outside their professional judicial capacities.

Plaintiff likewise fails to allege, and the Court fails to identify, any way in which Defendant Judges acted in the clear absence of jurisdiction. Thus, because neither exception applies to Plaintiff's claims, Defendant Judges are entitled to judicial immunity, and Plaintiff's claims against them must be dismissed.

### C. Plaintiff Fails to Allege Facts Which Support A Plausible Claim For Relief

Finally, even if Plaintiff did not merely seek to appeal losing state claims through the federal courts and judicial immunity did not bar her claims against Defendant Judges, the Court would still dismiss Plaintiff's Amended Complaint for failure to state a claim upon which relief may be granted. Plaintiff's complaint is exceedingly difficult to follow, but as Defendant Judges aptly summarize, "Plaintiff does not alleged facts constituting an intentional tort, negligence, a statutory violation, a constitutional violation, or any cause of action . . . with a foundation in Virginia or federal law." (Judges' Mem. at 10.) Rather, Plaintiff seeks redress for perceived misconduct, unfairness, failure to follow protocol and conflicts of interest.[9]

---

[9] The Court finds that Plaintiff's isolated assertion that Defendant Judge Rucker discriminated against her due to her race (Amend. Compl. at 5) is unsupported by any factual allegations and thus not entitled to the presumption of veracity.

The Court is not blind to the disappointment and frustration inherent to a losing day in court. Nevertheless, Plaintiff's claims amount to no more than personal grievances, and her piecemeal allegations do not plausibly allege a valid cause of action against any Defendant Judge. Accordingly, and for the reasons stated above, the Court will grant Defendant Judges' Motion to Dismiss.[10] (ECF No. 13.)

Pleading deficiencies similarly plague Plaintiff's claims against Ashford Meadows and Defendant Palanzi. For example, Plaintiff conclusively asserts that Ashford Meadows and Palanzi defamed her. (Amend. Compl. at 4.) But Plaintiff fails to outline any basis in law or fact for her assertion. Similarly, Plaintiff asserts that Ashford Meadows and Palani committed perjury during Plaintiff's state court proceedings, but even if Plaintiff's assertions are true, Plaintiff provides no basis for her civil claims. Indeed, it is well established that "a private citizen may not use the courts as a means of forcing a criminal prosecution." *Nyguyen v. Green*, 986 F.2d 1414, at *1 (table) (4th Cir. 1993). Simply put, Plaintiff's convoluted complaint fails to clearly lay out sufficient facts to provide either Ashford Meadows or Palanzi fair notice of what her claims are or the grounds upon which they rest, *Twombly*, 550 U.S. at 555 (2007) (quoting *Conley*, 355 U.S. at 47), and the Court must dismiss her complaint pursuant to Rule 12(b)(6).

---

[10] Defendant Judges Rucker and Minor, Jr. also argue that claim preclusion bars Plaintiff's claims against them. Because Plaintiff's claims fail for a variety of other reasons, the Court need not reach this argument and declines to address it further.

## IV. CONCLUSION

For the reasons set forth above, the Court will grant Defendants' Motions to Dismiss. (ECF Nos. 13, 15, 16.)

An appropriate order will issue.

Let the Clerk file a copy of this Memorandum Opinion electronically and notify all counsel of record and Plaintiff.

/s/
David J. Novak
United States District Judge

Richmond, Virginia
Date: December 5, 2022